UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROBERT EGAN,

                          Petitioner,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,[1]

                          Respondent.

Case No. 4:15-cv-00534-CWD

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Pending before the Court is the Petition for Review of Respondent's denial of

Disability Insurance Benefits and Supplemental Security Income filed by Petitioner

Robert Egan on November 12, 2015. (Dkt. 1.) Pursuant to 28 U.S.C. § 636(c), the parties

consented to the exercise of jurisdiction over this matter by the undersigned United States

Magistrate Judge. (Dkt. 10.) The Court has reviewed the Petition for Review and the

Answer, the parties' memoranda, and the administrative record (AR), and for the reasons

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. Rule Civ. P. 25(d), Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Respondent in this matter. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner Egan filed an application for Social Security Disability Insurance Benefits on July 6, 2012, claiming disability beginning January 17, 2012, due to back and neck pain, shoulder pain, memory loss, depression, and headaches. (AR 166, 212.) His application was denied initially and on reconsideration, and a video hearing was held on February 6, 2014, with Egan participating via video-conference in Boise, Idaho, before Administrative Law Judge (ALJ) Deborah J. Van Vleck in New Mexico. After considering testimony from Egan and a vocational expert, ALJ Van Vleck issued a decision finding Egan not disabled on March 28, 2014. (AR 17.) Egan requested review by the Appeals Council, which denied his request for review on September 18, 2015. Egan appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Egan was 44 years of age. He has a high school education and no college. Egan's prior work includes scrap metal salvager, construction worker, and operating engineer.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Egan had not engaged in substantial gainful activity since his alleged onset date, January 17, 2012.

MEMORANDUM DECISION AND ORDER - 2

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Egan's degenerative disc disease of the cervical lumbar spine, and "mental impairment variously diagnosed to include depression and anxiety, and mild executive dysfunction" severe within the meaning of the regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Egan's impairments did not meet or equal the criteria for listed impairments, specifically considering the criteria of Listings 1.04 (disorders of the spine), 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner must determine the claimant's residual functional capacity (RFC) and next determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Egan had the RFC to perform light work, except that Egan should no more than occasionally climb ramps and stairs, should never climb ladders, ropes, and scaffolds; he should no more than occasionally balance, stoop, kneel, crouch, and crawl; he should no more than occasionally reach overhead bilaterally, should no more than frequently reach in other directions bilaterally, frequently handle bilaterally and not more than occasionally finger bilaterally, and there are no limitations on feelings in his fingers. He should never work in the presence of unprotected heights or hazardous machinery; he should not be required to operate a motor vehicle as part of his job; he should never work in the presence of concentrated exposure to vibration; he is limited to perform simple,

**MEMORANDUM DECISION AND ORDER - 3**

routine and repetitive tasks; and he is limited to judgment decisions and work place changes that are consistent with simple, routine competitive work.

The ALJ found that, with this RFC, Egan was not able to perform his past relevant work as a scrap metal salvager, construction worker, or operating engineer. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education, and work experience. Here, the ALJ found Egan retained the ability to perform the requirements of representative occupations such as an usher, furniture rental consultant, and children's attendant. Therefore, the ALJ found Egan not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

**MEMORANDUM DECISION AND ORDER - 4**

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's

**MEMORANDUM DECISION AND ORDER - 5**

credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Egan contends the ALJ committed multiple errors at step four. Egan first argues the ALJ erred by failing to provide adequate reasons for assigning minimal weight to the opinions of his treating and examining physicians and his neuropsychologist. Second, he claims the ALJ erred by not properly determining his RFC because she failed to assess Egan's work-related abilities on a function-by-function basis. Finally, Egan argues the ALJ's credibility assessment regarding the alleged severity of his subjective pain complaints and limitations associated with his neck and back pain, and mental impairments is neither clear and convincing nor supported by substantial evidence in the record. Each of Egan's assignments of error will be discussed in turn.

### I.   Physician/Psychologist Opinions

Egan argues the ALJ erred by failing to provide specific and legitimate reasons[2] for rejecting, or providing only minimal weight to, the opinions of his treating and examining physician Dr. Verst, and two examining medical professionals, Drs. Blair and

_____

[2] The specific and legitimate standard is used because the opinions of Dr. Verst, Dr. Blair, and Dr. Eastvold are contradicted by the state agency physicians who opined Egan was not disabled.

**MEMORANDUM DECISION AND ORDER - 6**

Eastvold. The Commissioner contends the ALJ reasonably weighed all medical opinion evidence; the Court agrees.

## A. Legal Standard

The United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chatter,* 81 F.3d 821, 830 (9th Cir.1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987).

If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983). Likewise, the ALJ must provide clear and convincing reasons for rejecting the un-contradicted opinions of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995), *as amended* (Apr. 9, 1996). And, "like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

**MEMORANDUM DECISION AND ORDER - 7**

"The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (internal citation omitted). "Determining whether inconsistencies are material (or in fact inconsistencies at all) ... falls within this responsibility." *Id.* "An ALJ can meet the requisite specific and legitimate standard for rejecting a treating physician's opinion deemed inconsistent with or unsupported by the medical evidence 'by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Smith v. Astrue*, 2011 WL 3962107, at *5 (C.D. Cal. Sept. 8, 2011) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

**B. Treating Physician Verst**

Egan contends the ALJ erred by giving only limited weight to Dr. Verst's opinion that Egan was unable to return to work due to pain. The ALJ gave little weight to this opinion for the following reasons: (1) "the issue of disability is reserved to the Commissioner and therefore cannot be opined on by another;" (2) Dr. Verst did not treat Egan on a long-term basis and his opinion that Egan was unable to maintain full time employment was contradicted by Dr. Verst's own records; and (3) Egan's ability to fish twice a week conflicts with Dr. Verst's opinion that Egan is unable to work (AR 24.) The Court finds that all three reasons are specific and legitimate reasons supported by substantial evidence in the record.

**1. Dr. Verst's Opinion Re: Disability is Not Binding**

Although a treating physician's opinion is afforded the greatest weight, the physician's opinion on the existence of an impairment or the ultimate determination of

**MEMORANDUM DECISION AND ORDER - 8**

disability is not binding on the ALJ. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (2005)

("Although a treating physician's opinion is generally afforded the greatest weight in

disability cases, it is not binding on an ALJ as to the existence of an impairment or the

ultimate determination of disability."); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)

(statements by a medical source that a claimant is "disabled" or "unable to work" are "not

medical opinions, ... but are, instead, opinions on issues reserved to the Commissioner").

Accordingly, even though Dr. Vest was Egan's treating physician, the ALJ was not

obligated to give Dr. Verst's conclusory opinion regarding Egan's inability to perform

full time employment great weight.

## 2. Verst Only Examined Egan Twice and His Opinion is Not Supported by His Own Records

An ALJ may consider the length of treatment and frequency of treatment in

assessing the weight of a treating physician's opinion. 20 C.F.R. § § 404.1527(c)(2)(i),

416.927(c)(2)(i).[3] In addition, a treating physician's opinion may be rejected or afforded

less weight when his treatment notes "provide no basis for the functional restrictions he

opined should be imposed on [claimant]." *Connett v. Barnhart,* 340 F.3d 871, 875 (9th

Cir. 2003).

The ALJ properly considered that Dr. Verst rendered his opinion regarding Egan's

ability to engage in full time employment after examining Egan only twice, two weeks

---

[3] Pursuant to 20 C.F.R. 404.1527, treating physician opinions are entitled to deference and must be weighed using the following factors: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.

**MEMORANDUM DECISION AND ORDER - 9**

apart on May 31, 2012, and on June 13, 2012.[4] (AR 382, 386.) Moreover, the ALJ reasonably assigned limited weight to Dr. Verst's opinion because Dr. Verst's own treatment notes documented fairly mild physical limitation findings.

On July 31, 2012, Dr. Verst recorded the following in his records: "Robert has been off work since his motor vehicle accident of [sic] January 17, 2012. At this time he is unable to return to work." (AR 387.) However, the record supports the ALJ's detailed recitation of the evidence, including that Dr. Verst made very few findings during the first examination that predated this opinion. For instance, Dr. Verst recorded Egan had a normal range of motion in his hips, he had five out of five strength in his major muscle groups except in his upper extremity, his sensations were intact, he had normal reflexes throughout, and he had a normal gait, among other findings. (AR 383-84.) Dr. Verst's brief notes finding mild physical limitations do not support his opinion that Egan is unable to work. Therefore, the ALJ had a specific and legitimate reason to assign the opinion limited weight.

### 3.  Mrs. Egan's Statements that Egan Fishes Twice a Week

An ALJ may reject, or assign less weight to, a treating physician's opinion of a claimant's limited abilities when the opinion is inconsistent with the claimant's level of activities. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ noted, and the record supports, that around the same time Dr. Verst opined that Egan was unable

---

[4] It is not clear from the record whether Dr. Verst saw Egan on the date Dr. Verst recorded this statement, contained on a form identical to the form used for the first two examinations; however, other than the statement, there is nothing on the form (i.e., Egan's subjective complaints, or Dr. Verst's objective observations from the visit). (AR 387.)

**MEMORANDUM DECISION AND ORDER - 10**

to work, Egan's wife completed a third-party function report in which she indicated that Egan went fishing twice a week. The ALJ reasoned that Egan's ability to go fishing twice a week conflicted with Dr. Verst's opinion that Egan is unable to work. This was a specific and legitimate reason to assign limited weight to Dr. Verst's opinion.

### C. Examining Physician Blair

Egan contends the ALJ did not provide specific and legitimate reasons for rejecting Dr. Blair's opinions that Egan was markedly restricted in obtaining gainful employment, and also that Egan should not lift more than 10 pounds and could sit no longer than one hour without a five-minute break. More specifically, Egan claims the ALJ's assignment of limited weight to Dr. Blair's opinions was in error, because the ALJ "conveniently omitted" certain findings from Dr. Blair's evaluation, which would otherwise support Dr. Blair's opinion that Egan was severely impaired. For instance, Egan argues the ALJ did not include in his determination that Dr. Blair reviewed all of Egan's medical records. She also did not include Dr. Blair's observation that Egan had decreased motion in his neck and decreased sensation in his triceps, brachioradialis and achilles. And she did not include Egan's subjective report that he experienced continuing pain, despite conservative treatment.

An ALJ may reject an examining physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been property discounted as not credible." *Overstreet v. Colvin*, No. 1:13-CV-00324-CWD, 2014 WL 4702252, at *7 (D. Idaho Sept. 22, 2014) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)); *Salchenberg v. Colvin*, 534 F. App'x 586, 588 (9th Cir. 2013).

**MEMORANDUM DECISION AND ORDER - 11**

The ALJ detailed the findings of Dr. Blair in her decision. She noted Dr. Blair performed an independent medical examination of Egan on December 5, 2012.[5] (AR 396.) Dr. Blair documented in his report that Egan walked with a normal gait; he was able to heel to toe walk without difficulty; he had no tenderness over his cervical or lumbar spine; he had full strength in all of his major muscle groups in his upper extremities, including his wrists and fingers; he had a negative Hoffmans sign bilaterally; he had a normal range of motion in his hips without pain; and, he had a negative straight leg raise. (AR 400-01.) The ALJ gave great weight to these physical findings by Dr. Blair, because they were consistent with Dr. Verst's physical findings, and the findings of Egan's pain management specialist, Dr. Dille.

However, the ALJ gave limited weight to other opinions of Dr. Blair. Dr. Blair opined that, "because [Egan's training] appears to be in manual labor type positions, I believe he is markedly restricted in obtaining gainful employment." (AR 402.) Dr. Blair reported also that Egan could lift no greater than 10 pounds and could sit no longer than one hour without a five-minute break—Dr. Blair indicated, however, these restrictions were based on Egan's subjective complaints. (AR 403.) The ALJ explained that she gave these opinions only limited weight, because Dr. Blair's physical findings did not support the opinion that Egan could lift only 10 pounds, and because his opinions on Egan's functional limitations were based upon Egan's own subjective limitations. (AR 25.)

---

[5] The evaluation was requested (and financed) on behalf of the surety in connection with Egan's auto accident claim. (Dkt. 14 at 20.)

**MEMORANDUM DECISION AND ORDER - 12**

The Court finds the ALJ's evaluation of Dr. Blair's opinions was not in error. As noted by the ALJ, the opinions to which she assigned little weight—Petitioner's inability to work, inability to lift more than 10 pounds, and inability to sit longer than an hour without a five-minute break—were based solely on Egan's own subjective reports to Dr. Blair. Therefore, the reason for assigning limited weight to these portions of Dr. Blair's opinions was specific and legitimate.

### D. Examining Physician Eastvold

Egan contends the ALJ erred by rejecting neuropsychologist Eastvold's opinion that Egan is disabled and unable to work due to his physical impairments.[6] Specifically, Egan argues that, when assigning weight to Dr. Eastvold's opinion, she improperly pointed to "sporadic activities that simply do not support an ability to sustain full-time employment." (AR 27.) The Court respectfully disagrees.

Dr. Eastvold performed a neuropsychological evaluation of Egan on November 12, 2013. (AR 454.) As accurately noted by the ALJ, Egan reported to Dr. Eastvold that he suffered from persistent neck and back pain, vestibular dysfunction, right upper extremity peripheral numbness, irritability, anger, balance problems, dizziness, numbness in his right fingers, visual disturbances and fatigue. (AR 455.)

Dr. Eastvold's test results showed that Egan has an IQ of 90, which is within the average range; that his working memory was mildly impaired, his processing speed was below average his language skills were below average, his visual cognitive abilities were

---

[6] Dr. Eastvold notes that Egan's disability arose not from a neuropsychological perspective, but from his vestibular issues, peripheral numbness and chronic neck and back pain. (AR 456.)

**MEMORANDUM DECISION AND ORDER - 13**

intact and average; and, that his learning and memory skills were average to below average. Dr. Eastvold documented that Egan had average to below average scores in executive functioning and some deficits in his hand motor coordination and speed. In summary, Dr. Eastvold documented that Egan's "responses indicate significant thinking difficulties, including confusion, distractibility, and difficulty concentrating." (AR 462.)

The ALJ gave Dr. Eastvold's opinions regarding Egan's concentration, persistence, and pace limitations more weight, because she found they were consistent with the other findings in the record and consistent with the limitations in the RFC. However, the ALJ gave partial weight to other opinions of Dr. Eastvold.

For instance, the ALJ considered the portion of Dr. Eastvold's opinion where she indicated that, although there was "no evidence of antisocial behavior," Egan is unlikely "uncomfortable in social situations and may even avoid social interactions preferring to be alone." (AR 462.) The ALJ assigned this opinion only partial weight, because other evidence in the record indicated Egan was not as limited in social functioning as opined by Dr. Eastvold. In support of this finding, the ALJ referred to Mrs. Egan's third-party function report which describes Egan's daily activities consisting of watching television, visiting his brother at his shop, going to town, getting coffee, and in the evening watching television and going to bed. (AR 27.) The ALJ noted that, although Mrs. Egan described some increased irritability, Egan's "ability to regularly visit his brother, go to the coffee shop, and drive around town suggests that his social limitations are not as severe as Dr. Eastvold opined." (*Id.*) In addition, the ALJ reasoned that the evidence in the record as a whole does not support Dr. Eastvold's social limitation findings.

**MEMORANDUM DECISION AND ORDER - 14**

Egan's argument that the ALJ rejected Dr. Eastvold's opinion regarding Egan's ability to work is misplaced—the ALJ did not actually reject any of Dr. Eastvold's opinions or findings on the basis that Egan's activities supported an ability to sustain full-time gainful activity. Rather, the ALJ assigned only partial weight to Dr. Eastvold's opinion regarding Egan's social functioning limitations, because that opinion was inconsistent with Egan's activities, which did not support that he was as limited in social functioning as Dr. Eastvold opined. Accordingly, the Court finds the ALJ did not err in her assessment of weight to Dr. Eastvold's opinions.

## II.     RFC Assessment

Egan asserts that the ALJ's determination of his residual functional capacity was in error, because the ALJ did not assess whether Egan was capable of performing work-related activities on a function-by-function basis, in violation of Social Security Ruling ("SSR") 96-8p. The Court respectfully disagrees.

Pursuant to SSR 96-8p, "[t]he [ALJ's] RFC assessment must first identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis.... Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."

Here, the ALJ determined that Egan had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with some additional restrictions specific to Egan's pain symptoms. Egan's argument that the ALJ's description of his RFC as "light" was improper is without merit, because the regulation includes a clear function-by-function

**MEMORANDUM DECISION AND ORDER - 15**

definition of what limitations constitute an ability to perform light work.[7] The ALJ's use of this concise way to describe Egan's many functional limitations is in accord with SRR 96-8p. *See Buckner-Larkin v. Astrue*, 450 F. App'x 626, 627 (9th Cir. 2011) (unpublished) ("[I]n accordance with Social Security Ruling 96-8p, the ALJ defined [the claimant's] RFC as 'sedentary,'...which includes well-defined function-by-function parameters.") (internal citation omitted)); *Trofimuk v. Comm'r of Soc. Sec.*, 2014 WL 794343, at *6 (E.D. Cal. Feb. 27, 2014) ("While the ALJ did not explicitly lay out plaintiff's limitations, her citation to 20 CFR 416.967(c), which does state RFC on a function-by-function basis, was functionally equivalent to explaining plaintiff's limitations on a function-by-function basis."). Therefore, the Court finds the ALJ did not err in determining Egan's residual functional capacity.

## III.    Credibility

Egan contends the ALJ erred by failing to provide specific, clear and convincing reasons for rejecting the alleged severity of his subjective pain complaints and limitations associated with his back and neck pain, and his mental impairments. The ALJ found Egan's subjective pain complaints were "not as severe as alleged," because they are not

---

[7] Pursuant to the regulations, light work is defined as the following:

> Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some form of pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

**MEMORANDUM DECISION AND ORDER - 16**

supported by Egan's medical record. (AR 23.) For the following reasons, the Court finds the ALJ did provide specific, clear and convincing reasons supported by substantial evidence in the record when finding Egan's subjective pain complaints and limitations not fully credible.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.*

The ALJ must engage in a two-step analysis when evaluating the credibility of a claimant's subjective pain testimony. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035–36 (9th Cir.2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal citations and quotations omitted). The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir.1996)). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms by giving 'specific, clear and convincing reasons' for the rejection." *Vasquez v. Astrue,* 547 F.3d 1101, 1104–1105 (9th Cir. 2008).

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support

**MEMORANDUM DECISION AND ORDER - 17**

the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* SSR 96-7p.

During the hearing before the ALJ, Egan testified that his symptoms included pain in his lumbar spine and cervical spine, he had difficulty with his short-term memory and had to "read things over," and he previously experienced 2-3 headaches per month, but at the hearing was experiencing only one headache per month which he treated with over the counter medication. (AR 22.) He testified further that he was irritable, short tempered, and edgy, and he had difficulty concentrating and completing tasks due to pain. Egan testified he experienced pain in his lower back and shoulders, he could not move his head without experiencing pain, he had difficulty moving his shoulders and arms due to pain in

**MEMORANDUM DECISION AND ORDER - 18**

his neck and shoulders, he experienced numbness and burning in his fingers, and his head felt "really heavy." (AR 22-23.)

As a result of these symptoms, Egan testified that it is difficult for him to climb stairs, and that it is difficult for him to sleep, due to his pain. He testified he can sleep for only about 15 to 20 minutes at one time and no more than a couple of hours a night. (AR 23.) He can stand for only a short period of time, such as an hour and a half before he needs to sit down for 15 to 20 minutes. (*Id.*) He testified he can lift and carry no more than 20 pounds, and because he has difficulty with his hands, he experiences pain when writing. (*Id.*)

The ALJ found the objective medical evidence demonstrated evidence of an underlying impairment that could reasonably be expected to produce Egan's pain and other symptoms. (*Id.*) However, the ALJ found the findings from Egan's various physical examinations were inconsistent with the alleged severity of his symptoms and limitations. As noted by the ALJ, objective medical evidence assisted her in reaching a reasonable conclusion about the intensity and persistence of Egan's various pain and mental related symptoms. C.F.R. § 404.1529(c)(2) ("Objective medical evidence…is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"; *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

As the objective medical evidence that assisted the ALJ, she cited the 2012 findings of Dr. Joshua Olson, Egan's chiropractor. (AR 23.) Egan first presented to Dr. Olsen on January 26, 2012, nine days after his automobile accident, with complaints of

**MEMORANDUM DECISION AND ORDER - 19**

decreased range of motion, severe neck and back pain, and headaches. (AR 335.) By April of 2012, Dr. Olsen reported that Egan was doing much better with each treatment, and he reported the same to his chiropractor in May of 2012.

Also noted by the ALJ, in May of 2012, Egan presented to orthopedic specialist David Verst, M.D., complaining of pain in his neck and left shoulder. Egan described the pain as deep, aching and persistent, and rated his pain as a 7 to 8 on a scale of 1 to 10. (AR 380.) Dr. Verst noted Egan's spine had normal alignment with no obvious deformities. (AR 382.) He noted Egan had moderate paraspinal muscle spasm that was tender to palpation. (AR 383.) Dr. Verst noted also Egan had a normal range of motion in his hips and spine, he tested five out of five for strength in his major muscle groups except his left upper extremity, his sensations were intact, his reflexes were normal, and he had negative Hoffmans Spurling and Babinski tests. He had a normal gait, an intact coordination, full range of motion in his upper extremities including his shoulders elbows wrists and fingers, and he had a full range of motion in his hips, knees, ankles, and feet. (AR 384.)

Dr. Verst ordered a cervical MRI on Egan. The results from the MRI showed that Egan had mild degenerative disc disease at his C6-C7 level with mild marrow edema suggestive of active degenerative disc disease and possibly post traumatic in nature. (AR 370-71.) In addition, the results showed minimal bilateral neural foraminal narrowing at level C5-C6 with no evidence of significant spinal canal or neural foraminal narrowing at any level. Egan returned to see Dr. Verst on June 13, 2012; Dr. Verst referred Egan to

**MEMORANDUM DECISION AND ORDER - 20**

pain management specialist Clinton Dille, M.D., for facet injections at his C5-C6 and C6-C7 levels—there was no follow up appointment with Dr. Verst after the injections.

Also referenced by the ALJ are the records of a pain management specialist, Dr. Dille. On July 9, 2012, Egan saw Dr. Dille for the facet injections. Egan presented with neck pain and heavy, aching, constant, weakness in his left shoulder. Dr. Dille documented that Egan had tenderness in his cervical spine, he had a normal gait and station, his deep tendon reflexes were intact, he was alert and oriented, he exhibited no tics or abnormal psychomotor activity, he had a normal mood and affect, and he was well groomed with good eye contact. (AR 451-52.) On July 30, 2012, Egan presented to Dr. Dille again and reported that the facet injections provided 50% improvement in his symptoms and he rated his pain as a 4 out of 10. A physical examination of Egan revealed findings similar to his previous physical examination, including a normal gait and station, he was well groomed and had good eye contact, and he had a normal mood and effect. (AR 442-43.) Dr. Dille directed Egan to return if his pain increased; there is no evidence in the record Egan returned to Dr. Dille.

In December of 2012, Egan presented to Benjamin Blair, M.D., for an independent medical evaluation. (AR 396.) Egan complained to Dr. Blair that he was experiencing neck pain radiating into his shoulders and low back pain. (AR 399.) Dr. Blair recorded that Egan walked with a normal gait, he was able to heel to toe walk without difficulty, he had no tenderness over his cervical or lumbar spine, he had full strength in all of his major muscle groups in his upper extremities including his wrists and fingers, he had a

**MEMORANDUM DECISION AND ORDER - 21**

negative Hoffman's sign bilaterally, he had normal range of motion in his hips without pain, and he had a negative straight leg raise. (AR 400-401.)

In June of 2013, Egan underwent a functional capacity evaluation, performed by chiropractor Dax Sirucek. (AR 519.) In describing his symptoms, Egan complained of severe dizziness, poor balance, pain in his neck and hand, pain in his shoulders bilaterally and pain and inflexibility in his lumbar spine. Dr. Sirucek's physical examination findings reported that Egan had moderate hypertonicity in his paraspinal muscles bilaterally, tenderness and pain in his cervical thoracic and lumbar spine regions, limitations in range of motion in his cervical spine, five out of five strength in his upper extremity bilaterally, he had normal reflexes and sensations in his upper extremity bilaterally, he was able to heel to toe walk, he exhibited fatigue during the functional neurological assessment, he was unable to tandem walk and showed some abnormalities when touching his index finger to his nose, and he appeared alert and oriented with a normal mood and affect. (AR 521-22.)

As indicated above, the ALJ specified multiple clear and convincing reasons, each supported with substantial evidence, for finding that, despite signs of degenerative disc changes in his lumbar spine, objective evidence recorded during Egan's physical examinations show that Egan's physical condition and mental impairments were not as severe as he alleged during his testimony about his limitations. Accordingly, the ALJ had specific, clear and convincing reasons for finding Egan not fully credible regarding the severity of his subjective pain complaints and limitations associated with his back and neck pain, and mental impairments. Therefore, the ALJ did not err.

**MEMORANDUM DECISION AND ORDER - 22**

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED.**

Dated: **March 20, 2017**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**